IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ROSE HILLS, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:18-cv-301-ADA |
| | § | |
| SAM'S EAST, INC., SAM'S CLUB, and | § | |
| WAL-MART, INC., formerly known as | § | |
| WAL-MART STORES, INC., | § | |
| Defendants | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT OPINIONS OF HECTOR MIRANDA-GRAJALES, MD, CLCP**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rose Hills, Plaintiff in the above-styled and numbered cause and files this Plaintiff's Response to Defendants' Motion to Exclude the Expert Opinions of Hector Miranda-Grajales, M.D., CLCP. Plaintiff asks the Court to deny Defendants' Motion and for cause would show as follows:

## I.      SUMMARY OF ARGUMENT

Dr. Miranda-Grajales' ("Dr. Miranda") opinions should not be excluded as they are reliable, relevant, and factually based. Dr. Miranda testified about the information he reviewed and his methodology for creating a life care plan. Dr. Miranda's opinions regarding Plaintiff's injuries are not conclusory, as they are based on his knowledge, skill, experience, training, and education as a medical doctor and certified life care planner. Furthermore, the law does not require Dr. Miranda adjust his life care plan in order for it to be admissible.

## II.   BACKGROUND

This matter arises out of a fall in the Sam's Parking lot that occurred on October 13, 2016. Plaintiff seeks recovery of past and future medical expenses, among other claimed damages.[1]  In support of Plaintiff's claims, Plaintiff disclosed Hector Miranda-Grajales, M.D., CLCP, as a retained testifying expert.[2]  Based on his designation and report, Dr. Miranda testified that Plaintiff's trip and fall caused the injuries for which she will require future medical treatment ranging from $713,802.00 to $1,361,770.00.[3]

## III.   ARGUMENTS & AUTHORITIES

A court should allow the testimony of an expert witness who is well qualified by knowledge, skill, experience, training, or education to render an opinion based on scientific, technical, or other specialized knowledge.[4] "The rejection of expert testimony is the exception rather than the rule."[5]  Under Federal Rules of Evidence 702 ("Rule 702") and the U.S. Supreme Court's ruling in *Daubert*, the district courts act as "gatekeepers" to "ensure that speculative, unreliable expert testimony does not reach the jury."[6] The Supreme Court has recognized that a qualified expert's testimony is admissible as long as it is relevant and reliable.[7] The test for relevancy is whether the expert testimony relates to any issue in the case that would aid the jury in their decision about either the underlying facts or evidence.[8] If the information would be helpful to the jury, the expert may testify about specialized knowledge if "(1) the testimony is based upon

---

[1] Plaintiff's First Amended Compl. at 7.
[2] *See* Ex. B: Plaintiff's Expert Disclosures.
[3] *See* Ex. C: Life Care Plan for Rose Hills; *See also* Ex. E: Dep. of Dr. Miranda
[4] Fed. R. Evid. 702(a); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993).
[5] Fed. R. Evid. 702 advisory committee's notes (2000).
[6] *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).
[7] *Daubert*, 509 U.S. at 591.
[8] *Id*.

sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[9]

In addition to relevancy, the courts need to determine the reliability of the expert witness's testimony.[10] The Supreme Court stated that it would not create a list of factors because each case is different, therefore, a federal court should consider any additional factors that may advance its Rule 702 analysis.[11] Moreover, the Court further states that Rule 702 is intended to be "flexible" and district courts "have substantial discretion in deciding how to test an expert's reliability."[12] Notably, experience-based expert testimony is not precluded under Rule 702 or the case law.[13] The Court further states in *Kuhmo* that "it will at times be useful to ask even of a witness whose expertise is based purely on experience . . . whether his preparation is of a kind that others in the field would recognize as acceptable."[14] When an expert relies primarily on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[15]

### A.    Dr. Miranda's Opinions are Relevant and Reliable

Dr. Miranda is a physician licensed in the state of Texas who has been practicing medicine for over 13 years.[16]  Dr. Miranda is Board Certified by the American Board of Physical Medicine and Rehabilitation, Board Certified by the American Board of Pain Management, and Board Certified in Brain Injury.[17] In addition to being a medical doctor, Dr. Miranda has been a certified

---

[9] Fed. R. Evid. 702; *see also McCorvey*, 298 F.3d at 1256.
[10] *Daubert*, 509 U.S. at 591.
[11] See *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[12] *Daubert*, 509 U.S. at 594.
[13] Fed. R. Evid. 702, *Kumho*, 526 U.S. at 151.
[14] *Kumho*, 526 U.S. at 151.
[15] *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).
[16] Ex: D; CV of Dr. Miranda.
[17] *Id.*

life care planner for over 4 years.[18] During his time as a life care planner, Dr. Miranda has created

over 250 life care plans, testified in 50 depositions, testified in approximately 6-8 trials, and has

never been struck.[19]   Defendants are not challenging Dr. Miranda's credentials as a medical

provider, rather they are insinuating that his job as a life care planner does not require any

specialized skill and is therefore, not relevant or reliable; however, Defendants fail to acknowledge

the additional skills Dr. Miranda utilizes to come to his ultimate final conclusion.[20]

Here, Dr. Miranda's testimony and life care plan are relevant as they go to the facts and

evidence of Plaintiff's case, namely they help the jury understand the full picture of the medical

treatment that Plaintiff will need in the future. Specifically, Dr. Miranda used his knowledge,

training, and expertise as a medical doctor to examine Plaintiff to determine if Plaintiff's subjective

complaints of pain were consistent with the objective findings in her medical records.[21] According

to Dr. Miranda's testimony, after his physical examination of Plaintiff and after reviewing all of

Plaintiff's medical records, both pre-incident and post-incident, he agreed with the post-traumatic

headaches secondary to cervical herniations diagnosis of Plaintiff's treating physicians.[22] Once Dr.

Miranda had confirmed the necessity for future treatment and had determined what treatments

would be appropriate, he proceeded to take the information he gathered and put it into a well-

known and industry standard database, FairHealth.org.[23] Dr. Miranda's credentials for the database

allow him to have access to a portion of the site that the public cannot access—this gives him the

ability to obtain billing codes for the procedures and treatment that Plaintiff will need in the

---

[18] *Id.*
[19] Ex. E: Dep. of Dr. Miranda, page 76:25 – 77:7.
[20] Defendants' Motion to Exclude page 5.
[21] Ex. F: Aff. of Dr. Miranda, *See* also Ex. E: Dep. of Dr. Miranda, page 85:11-85:21.
[22] Ex. E: Dep. of Dr. Miranda, page 94:18 – 95:9.
[23] *Id.* at page 57:6 – 58:24.

future.[24] Then, Dr. Miranda uses his training and experience, as a medical doctor, to calculate how many procedures Plaintiff will require and the varying degrees of those procedures, the costs of the procedures, and the frequency of the procedures to determine the total amount of future care that Plaintiff may need.[25] Dr. Miranda's testified that the methodology he employed is the same as other life care planners and is industry custom.[26]

Dr. Miranda's testimony is not only relevant—as it pertains to Plaintiff's damage model and the likelihood that she will need future medical care—but also reliable as he is a Board Certified medical doctor, a certified life care planner, and testified that his methods are in line with others in the community.[27] Dr. Miranda's testified that he uses Fairhealth.org to determine the future cost of Plaintiff's healthcare, as use of this cost data is standard in the industry.[28] The International Academy of Life Care Planners ("IALCP") established "Standards of Practice" that contains tenets and methodologies of life care planners.[29] These tenets and methodologies include the use of data analysis, like FairHealth.Org, because cost projections should be based upon reliable data sources or vendor surveys to reflect prevailing medical costs within the community where services are most likely to be rendered.[30] Fairhealth.org is a reliable database that provides subscribers relevant and valid information about medical fees in the current marketplace for physician services (inpatient and outpatient), therapeutic services, and diagnostic services (both technical and professional components).[31]

---

[24] *Id*. at page 71:12 – 72:6.
[25] *Id*. at page 81:23 – 82:24.
[26] *Id*. at page 89:13 – 89:21.
[27] *Id*.
[28] *Id*
[29] Standards of Practice for Life Care Planners, IARP, 3rd Ed. 2015.
[30] *Id*.
[31] Ex: E: Dep. of Dr. Miranda, page 67:7-13. *See also* Ex: F: Aff. of Dr. Miranda, Page 3, Ex: 3.

Defendants state Dr. Miranda's actions do "not require an expert to input CPT code[s] into a website." However, Defendants seem to have misunderstood Dr. Miranda's methodology. Dr. Miranda testified that he underwent a standard methodology for coming to his final conclusions and utilized the training he received when he became a certified life care planner—he reviewed the medical records, including Plaintiff's MRI, he did a physical examination on Plaintiff, he took Plaintiff's history, he determined what course of treatment Plaintiff would need in the future (including the specific treatments, how often Plaintiff would need each treatment, and two different types of medication depending on what her needs evolved into), he went to FairHealth.org and searched for the correct CPT codes associated with the future treatment, and then at his deposition, he reviewed Plaintiff's prior medical records as well.[32] To minimize Dr. Miranda's involvement in creating a life care plan to merely inputting numbers is demonstrably false.

Defendants go on to state that trial courts "must analyze the *Robinson* factors" to determine the reliability of expert opinion.[33] While the Supreme Court of Texas held that a trial court *may* consider certain factors, the Court went on to further state that "these factors include, but are not limited to."[34] Defendants have misconstrued the law in an attempt to create additional hurdles for Dr. Miranda to overcome. Under *Daubert* and *Kuhmo* all that is required for an expert witness to testify is for the court to determine if their testimony is helpful to the jury and their testimony is reliable.[35] In determining the admissibility of expert evidence, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence[36] nor is the court's

---

[32] Ex. E. Dep. of Dr. Miranda, page 89:7 – 89:21.
[33] Defendants' Motion to Exclude, page 3
[34] *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1999).
[35] *Daubert*, 509 U.S. at 594, *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).
[36] *Rosenfield v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).

gatekeeper role under *Daubert* intended to supplant the adversary system or the role of the jury.[37]

The purpose of the trial court's gatekeeping function is to make certain that an expert employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field.[38] Expert witness jurisprudence recognizes that "vigorous cross examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence."[39] Because Dr. Miranda

testified that his methods were based on his training and experience as both a doctor and a life care

planner and because the information in his life care plan and testimony would help the jury

understand the future medical care necessitated by the incident, Dr. Miranda's testimony is both

relevant and reliable.

B.      **Dr. Miranda is not required by law to account for the present value of money**

Defendants contend that Dr. Miranda's opinions are neither relevant nor reliable due to an

"analytical gap" created by his failure to account for the time value of money. Defendants argue,

that without the assistance of an economist, the "jury cannot determine the accurate cost of

Plaintiff's life care plan if solely relying on the life care plan or Dr. Miranda's testimony."[40] It is

important to note that Defendants do not utilize any supporting case law for their proposition that

an economist must be used to determine present value of money, nor do they provide any case law

to show that "juries cannot determine the accurate cost of Plaintiff's life care plan" on their own.[41]

Defendants, again attempt to rely on the *Robinson* factors by stating, "Dr. Miranda's nominal value

---

[37] *Maiz v. Virani*, 253 F.3d 641, 665–66 (11th Cir. 2001).

[38] *Kumho*, 526 U.S. at 151.

[39] *Daubert*, 509 U.S. at 596.

[40] Defendants' Motion to Exclude, page 7.

[41] Defendants cite to *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 349 (Tex. 2015) solely for the proposition that expert testimony must be sufficiently tied to the facts so that it will aid the jury, not for any opinion on present value as it is not discussed in this case.

opinions cannot withstand scrutiny under the *Robinson* factors."[42] However, once more, Defendants are attempting to mislead this Court. [43] Defendant is asking the Court to exclude testimony based on a threshold requirement that simply does not exist by law.

In a diversity case, the determination of whether an award of future damages must be reduced to present value is an issue controlled by state law.[44] Texas law requires the jury to assess damages to accrue in the future on the basis of the amount if paid now in cash.[45] However, it has been the law for 60 years in Texas that evidence of the earning power of money or the discount rate for present value calculations is not required.[46] Instead, the jury is presumed to have common knowledge of interest rates, and thus when instructed properly, will be capable of reducing their damage award to present value.[47] In addition to reducing future damages to present value, a jury may also consider inflation, or the rising cost of medical expenses.[48] In *Foradori*, the Fifth Circuit generally stated, "[t]his is not an element of damages about which there is some mathematically 'correct' amount."[49] The Fifth Circuit found one expert's opinion "open to criticism" because it "took no account of potential inflation in the cost of medical expenses."[50]

Here, no requirement exists where Dr. Miranda would have to present his life care plan in present value. Despite Defendants attempts to insist that, the jury is incapable of making the

---

[42] Defendants' Motion to Exclude, page 7.

[43] The *Robinson* factors have nothing to do with the present value of money; they are merely a set of non-exhaustive factors that the Court could look at to determine if the expert has relevant information and is reliable.

[44] *Peters v. T.G. & Y. Stores Co.*, 707 F.2d 227, 229 (5th Cir. 1983).

[45] *Mo. Pac. R.R. Co. v. Kimbrell*, 334 S.W.2d 283, 284 (Tex. 1960).

[46] *Id.* at 287.

[47] *Id.* at 286.

[48] *See Foradori v. Harris*, 523 F.3d 477, 515–516 (5th Cir. 2008).

[49] *Id.* at 516.

[50] *Id.* at 515.

necessary calculations for present value; their assertions contradict 60 year worth of case law.[51]

The Supreme Court of Texas as well as the Fifth Circuit have stated unabashedly that the reduction

of future damages to the present value is within the purview of the jury and therefore, no

requirement exists for an expert to do those calculations. Therefore, Dr. Miranda is qualified by

his experience and training to create a life care plan for Plaintiff without having to account for the

present value of money.

**C.      Dr. Miranda's opinions are opinions, not legal conclusions and are thus admissible.**

According to Black's Law Dictionary, a legal conclusion is a "statement that expresses a

legal duty or result but omits the facts creating and supporting the duty or result."[52] Defendants

contend that Dr. Miranda's opinions are legal conclusions because Dr. Miranda "does not provide

any scientific or technical methodology or reasoning for such conclusions."[53] However, Dr.

Miranda testified that he conducted a physical examination of Plaintiff and reviewed the medical

records.[54] Dr. Miranda looked at Plaintiff's objective findings, compared those to her subjective

complaints, and agreed with her treating physicians on the diagnoses.[55] Dr. Miranda further

testified that because he is familiar with the cervical spine and headaches in his practice and has

seen injuries similar to Plaintiff's before, he is comfortable saying to a reasonable degree of

medical certainty that the fall caused Plaintiff's injuries.[56]

Dr. Miranda has adequately accounted for obvious alternative explanations.[57] In his

deposition, opposing counsel asked Dr. Miranda about other incidents in Plaintiff's life that could

---

[51] *Kimbrell*, 334 S.W.2d at 284.
[52] LEGAL CONCLUSION, Black's Law Dictionary (11th ed. 2019).
[53] Defendants' Motion to Exclude, page 9.
[54] Ex. E: Dep. of Dr. Miranda, page 94:18 – 95:9.
[55] *Id. See* also Ex. F: Aff. of Dr. Miranda
[56] *Id.* at page 36:8 – 36:24, 84:16 – 87:10, 90:24 – 91:7. *See* also Ex. F: Aff. of Dr. Miranda
[57] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 248–49 (5th Cir. 2002).

cause the injuries and treatment in question.[58] Dr. Miranda stated that he was aware of the other incidents, but based on her previous medical records and the complaints of pain made after the fall, Dr. Miranda is confident in his belief that the fall caused Plaintiff's injuries.[59] Dr. Miranda has not commented on the legal duty of Defendants in this case, but rather only on the medical treatment and future care that Plaintiff will need. Therefore, Dr. Miranda testimony will assist the trier of fact and is admissible.

## IV.    CONCLUSION

Defendants are free to disagree with Dr. Miranda's opinion of how Plaintiff obtained her injuries; however, that is not the purpose of a *Daubert* motion. The purpose of a *Daubert* motion is to determine if the expert is reliable and if the information they are presenting is relevant. Based on his knowledge, skill, experience, training, and education, Dr. Miranda is qualified to discuss causation of Plaintiff's injures, the medical treatment she will possibly require in the future, and the costs of those future treatments, Dr. Miranda reviewed Plaintiff's medical records, both prior and post incident, conducted a physical examination of Plaintiff, conducted a history of Plaintiff, and compared the objective and subjective findings. Then, he took that information and created a life care plan specifically for Plaintiff. The calculations and methodology he used are industry custom and generally accepted. Plaintiff's life care plan will aid the jury in understanding the totality of her injuries and Dr. Miranda's testimony is necessary to explain the process, as it is not something that the public would be able to navigate. It is for these reasons, Plaintiff asks the Court to set the motion for a hearing and after the hearing, to DENY Defendants' Motion to Exclude the Expert Opinion's of Hector Miranda-Grajales, MD, CLCP.

---

[58] Ex. E: Dep. of Dr. Miranda, page 17:10 – 21:8.
[59] *Id*. at page 83:14 – 87:10. *See* also Ex. F: Aff. of Dr. Miranda

Respectfully submitted,

THE CARLSON LAW FIRM, P.C.
2010 SW HK Dodgen Loop, Suite 201
Temple, Texas 76504
Tel: 254-771-5688
Fax:254-771-0655


/s/ Julie L. Peschel_____
JULIE L. PESCHEL
TX SBN: 24052308
Email: Jpeschel@carlsonattorneys.com
JESSICA N. MORRISON
TX SBN: 24100713
Email: Jmorrison@carlsonattorneys.com

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

This is to certify that on this, the 7th day of February, 2020, a true and correct copy of the

foregoing has been forwarded to all counsel of record.

/s/ Julie L. Peschel_____
JULIE L. PESCHEL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **ROSE HILLS,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:18-cv-301-ADA** |
| | § | |
| **SAM'S EAST, INC., SAM'S CLUB, and** | § | |
| **WAL-MART, INC., formerly known as** | § | |
| **WAL-MART STORES, INC.,** | § | |
| **Defendants** | § | |

## ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT OPINIONS OF HECTOR MIRANDA-GRAJALES, MD, CLCP

On this day came to be heard Defendant's Motion to Exclude the Expert Opinions of Hector Miranda-Grajales, MD, CLCP, Plaintiff's Response to Defendant's Motion to Exclude the Expert Opinions of Hector Miranda-Grajales, MD, CLCP, and the Court, having reviewed the papers on file in this cause and having heard the arguments of counsel, if such arguments were requested, it is of the opinion of the Court that Defendant's Motion should be DENIED in its entirety.

SIGNED this _____ day of _____, 2020

_____
JUDGE PRESIDING